## No. 12,726.

CRANE ET AL. *v.* PEOPLE.

(11 P. [2d] 567)

Decided May 2, 1932.

Messrs. Blount, Silverstein & Rosner, for plaintiffs in error.

Mr. Clarence L. Ireland, Attorney General, Mr. Wallace S. Porth, Assistant, for the people.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

Plaintiffs in error are hereinafter referred to as defendants, or as Crane and Flynn respectively. A jury returned them guilty of "conspiracy to obtain money by means of false pretenses." Thereon Crane was sentenced to the penitentiary for a term of five to six years and Flynn for a term of four to five years. To review that judgment they prosecute this writ.

Defendants and one Dill were jointly charged in each of eleven counts of an information. Dill was not apprehended. At the close of the people's evidence they withdrew six of the counts. The jury returned verdicts of guilty on the second count and not guilty on the remaining four.

There are eleven "amended assignments of error" set forth in the abstract. We are advised by defendants' brief that there were originally "several hundred" and in the "obiter dicta" section thereof some of these are pressed and their bases indicated. We ignore them for

the reason suggested by the above quoted title of the brief under which they appear, and commend the wisdom which dictated the amendment.

Counsel for defendants sum up their contentions, covered by these eleven assignments, in two short statements, which we think may be thus fairly further condensed: (1) The withdrawal of the six counts amounted in law to verdicts of acquittal on all; (2) the verdicts of not guilty on the four counts are inconsistent with, and hence render impotent, the verdicts of guilty on the second.

These eleven counts vary in statement, and even, in some instances, as to the particular offense which it is charged the acts complained of constitute. But every possible presumption in defendants' favor is indulged by treating them, as we do, as identical. When the first six were withdrawn the position of the prosecution was thus stated by the district attorney: "The counts withdrawn were just a repetition of what is left, practically;" and the court said that the remaining five "arise out of and are based upon the same transaction."

It should be first noted that there is here presented no question of jurisdiction, sufficiency of charge, admission or rejection of evidence, sufficiency thereof, legality or misconduct of the jury. Defendants simply say, in substance, that when one charge was dismissed, or a verdict of not guilty returned on one, no verdict of guilty on a substantially identical charge can stand, nor can they ever be retried.

Among the Colorado cases cited in support of defendants' position are: *Roland v. People,* 23 Colo. 283, 47 Pac. 269; *Bigcraft v. People,* 30 Colo. 298, 70 Pac. 417; *Davidson v. People,* 64 Colo. 281, 170 Pac. 962; *Castner v. People,* 67 Colo. 327, 184 Pac. 387; *Briola v. People,* 76 Colo. 489, 232 Pac. 924. It is clear, however, that no one of these reaches the identical question here raised. The most that can be said in this connection is that they lead logically up to our announcement in the Webb case, here-

inafter noticed. In fact it may be that some of them were inferentially overruled in *Loos v. People,* 84 Colo. 166, 268 Pac. 536, which comes very close to the question now before us. In the Bigcraft case, supra, a conviction on one such count was held to operate as an acquittal on the other. Certainly the effect of such conviction on the one count could not be weakened by failure of the jury to take any action on a verdict of acquittal submitted to them on the other. Yet in the Loos case, supra, we held this no such acquittal as resulted in a conflict.

We need not, however, further notice these cases of doubtful application because in *Webb v. People,* 83 Colo. 1, 262 Pac. 906, on which defendants now rely, the question was squarely presented to this court en banc, and under that decision, announced without dissent, defendants here would prevail. True, when announced, it rested in part on *Kuck v. State,* 149 Ga. 191, 99 S. E. 622, which was later modified by that court in *Boyd v. State,* 156 Ga. 48, 118 S. E. 705, upon which modification we largely rested our decision in the Loos case, decided some six months later. But our conclusion in *Webb v. People, supra,* was also supported by state and federal cases, perhaps by the distinct weight of authority, excluding, however, the United States Supreme Court, in which the identical question had, apparently, never risen. We are not now, however, without enlightenment from that great tribunal. January 11, of the present year, two months before the instant case was at issue and prior to the filing of the last two briefs herein, that court handed down its opinion in *Dunn v. United States,* 52 Sup. Ct. 189, not herein cited by counsel. Therein, in a brief opinion by Mr. Justice Holmes, the identical question was decided contrary to the contention of these defendants and contrary to our conclusion in the Webb case.

There Dunn was tried on three counts, convicted on the first and acquitted on the others. We disregard the third as unnecessary to our examination. The first charged maintenance of a nuisance by keeping for sale

at the place designated "five drinks of whiskey and one drink of beer." The second charged unlawful possession of the same liquor at the same time and place. It is perfectly apparent that if defendant was not guilty on the second count he could not have been guilty on the first. The United States Supreme Court held that this inconsistency did not invalidate the verdict of guilty. That holding is supported by state and federal courts. *State v. Huff*, 75 Kan. 585, 90 Pac. 279, 12 L. R. A. (N. S.) 1094; *Browning v. State*, 120 Ohio St. 62, 165 N. E. 566; *Steckler v. United States*, 7 Fed. (2d) 59; *Gozner v. United States*, 9 Fed. (2d) 603. Mr. Justice Butler alone dissented in the Dunn case. In a very able opinion he presents the authorities to the contrary and the reasons upon which they rest. Among these may be noted: *State v. Headrick*, 179 Mo. 300, 78 S. W. 630; *Speiller v. United States*, 31 Fed. (2d) 682; *Rosenthal v. United States*, 276 Fed. 714.

While little is cited in the way of authority in support of the decision, the dissenting opinion emphasizes the clear cut question before the court and sets forth the numerous authorities on both sides of it which were considered. True, Mr. Justice Holmes says: "If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance, and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the courts of a single indictment the same rule must hold." We cannot, however, regard this portion of the opinion as more than the announcement of a general rule; because, where different offenses are separately charged and separately tried, the same evidence being offered in support of each, an acquittal on one can be pleaded as res judicata of the other if the facts which the jurors must have found, or failed to find, to acquit on the first are involved in and inconsistent with, guilt on the trial of the second. All this

is clearly demonstrated in the dissenting opinion of Mr. Justice Butler in the same case. From the latter source also we learn in detail what is inferentially admitted in the main opinion, i. e., that the possession negatived by the verdict of not guilty on the second count was essential to support the verdict of guilty on the first. The true reason for the majority opinion in the Dunn case is not to be found in the general rule so stated, supra, but in the holding which is supported by the quotation which Mr. Justice Holmes gives from *Steckler v. United States,* 7 Fed. (2d) 59, 60. That case and that quotation dealt, not with separate offenses, charges and trials, but with separate counts charging the same offense in the same trial. The basis of the judgment in the Dunn case, like the basis of the judgment in the Webb case, is clear and unequivocal. In the first it is thus stated: "Consistency in the verdict is not necessary;" in the second it is thus stated: "The two verdicts are irreconcilable," hence "each * * * destroys the other." These propositions are in direct and irreconcilable conflict. The Supreme Court of the United States is thus clearly committed to what we may properly term the Kansas rule, because it has been so often announced and upheld in that jurisdiction. *State v. Jackson,* 121 Kan. 711, 249 Pac. 688; *State v. Geselle,* 131 Kan. 729, 293 Pac. 494. See also *State v. Daly,* 77 Mont. 387, 250 Pac. 976, and cases cited in the three foregoing.

These "inconsistent verdicts" have perhaps been unduly censured by reviewing courts, even by those following the Kansas rule. To clearly understand and correctly interpret them we have but to change places with the jurors, laying aside our familiarity with technical rules and remembering that they are often inadequately instructed thereon. They can not imagine that a trick is being played upon them, or that something superfluous is being injected "just to make it hard." They are asked to answer a given question, propounded in different ways. That question is not, "Is defendant not guilty,"

but, "Is defendant guilty?" If they can not say "Yes" to the last the law requires them to say "Yes" to the first. Their primary duty is to find what defendant is, not what he is not. Once they answer that he is guilty and find themselves confronted with the necessity of again answering the same question put in a different way, knowing that defendant is charged with, proved guilty of, and can be sentenced for, but one offense, it never occurs to them that they should repeat that finding. Hence they select that charge whose wording seems to them to best fit their view of the evidence, write "guilty" as to that and perfunctorily dispose of the remainder with a "not guilty." If A be twice charged in an information with the murder of B, at the same time and place and by the same means, must a jury, convinced of A's guilt, be obliged, at the peril of discharging him entirely, to find in effect that B has been twice killed?

From the practical standpoint of the administration of the criminal law, the reason for the Kansas rule is readily comprehended when we remember that it is the well known and repeatedly approved practice of prosecutors to charge the same offense in varying language in separate counts of the same information. This is often necessary because the state can not, in advance, be certain what facts may be developed by the evidence, and a bill of particulars is thus obviated. When the people's evidence is in, an election between the counts is equivalent to a dismissal or abandonment of those not selected. But if this is equivalent to an acquittal thereon, as held in the Rowland case and the Briola case, supra, the state, though having a water tight case again defendant, would dare neither to elect, dismiss, nor abandon. Nor would it dare submit verdicts on each count save under an instruction to convict on all or none, since an acquittal on one operates as an acquittal on all, as held in the Webb case, supra. But since sentence could be pronounced on but one, verdicts of guilty on others would be an idle gesture, and the law never requires the doing of a futile

thing. If an acquittal on one count operates as an acquittal on all it can, with equal plausibility, be contended that verdicts of guilty on all are inconsistent and constitute double jeopardy. The tactical move would therefore be, first to have all but one set aside on that ground, then attack the remaining verdict on the ground that the action taken on the others was equivalent to an acquittal on all. It follows that the state could never safely file separate counts based on a single offense, and could only respond to a motion for a bill of particulars by anticipating, at its peril, what the evidence would develop.

The reasoning which must be relied upon to support the authorities on which the Webb case rests leads to another illogical conclusion. If an instructed verdict, or a withdrawal during the trial, or the failure of the jury to return any verdict, on one of two practically identical counts, operates as an acquittal thereon and bars further prosecution on the other, this amounts to a decision of fact, by court or prosecutor, or mere inaction, in cases where the evidence is in conflict. But in criminal cases such questions of fact can only be determined by the jury.

Suffice it here to say that, convinced that no peril to personal rights can arise from the establishment of the Kansas rule, that the administration of the criminal law will be greatly simplified by following it, and met by the conflicting conclusions of state and federal courts, we now elect to overrule the Webb case and follow the highest judicial tribunal of the nation.

The judgment is accordingly affirmed.

MR. JUSTICE BUTLER and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE BUTLER, dissenting.

It is said in the majority opinion that when *Webb v. People,* 83 Colo. 1, 262 Pac. 906, was decided it was supported "perhaps by the distinct weight of authority." The court bases its reversal of that case upon *Dunn v.*

*United States* (U. S.), 52 Sup. Ct. 189. That decision, as I understand it, is not inconsistent with the decision in the Webb case, and does not support the conclusion announced in the majority opinion in this case. There is a vital distinction between the two cases.

In the Dunn case the question before the court may be stated thus: Was the crime charged in the second count such that, if the defendant was not guilty of such crime, he could not be guilty of the crime charged in the first count? Or, in other words, Was the crime charged in the second count such that, if there had been separate indictments and that charge had been tried first, an acquittal could be pleaded as res judicata of the charge in the other indictment? If it was, the judgment must be reversed; if it was not, the judgment must be affirmed. Eight justices were of the opinion that the crime charged in the second count was so far different from that charged in the first count that the defendant could be not guilty of the former and still be guilty of the latter. The court said: ''If separate indictments had been presented against the defendant for possession and for maintenance of a nuisance and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as res judicata of the other. Where the offenses are separately charged in the counts of a single indictment the same rule must hold.'' That view logically called for an affirmance of the judgment, and such was the decision of the court. The dissenting justice, on the other hand, was of the opinion that, if the defendant was not guilty of the crime charged in the second count, he could not be guilty of the crime charged in the first; in other words, if there had been separate indictments, an acquittal of the former charge would be res judicata of the latter. That view necessarily called for a reversal of the judgment, and had the majority of the justices taken that view, the judgment undoubtedly would have been reversed.

The majority opinion in the present case treats the

language quoted above from the majority opinion in the Dunn case as no more than "the announcement of a general rule." I do not so understand it. The language negatives such a supposition. It does not purport to state a mere general rule. The statement is not in the abstract, but in the concrete; it is applied specifically to the case then before the court. The court was not dealing in generalities, but in a brief, concise opinion of two pages dealt with the facts in that particular case and with the law applicable thereto. It would seem that the quoted language should not be passed over as of no importance to the decision. It shows on its face that it was used to justify the result at which the court arrived. The conclusion that it was the very basis of the decision seems to me to be irresistible.

In the present case, at least some of the counts upon which the defendants were acquitted are identical with the one upon which they were convicted; the court treats all of the counts as identical. Referring to the Dunn case, this court says that, "It is perfectly apparent that if defendant was not guilty on the second count he could not have been guilty on the first." Having thus adopted the premise adopted by the dissenting justice in the Dunn case, this court adopts the conclusion of the majority of the justices in that case—a conclusion based, as we have seen, upon a premise the very opposite of the one adopted by the dissenting justice in that case and by this court in the present case. In other words, this court adopts the premise adopted in the dissenting opinion in the Dunn case, but rejects the conclusion to which that premise necessarily leads; and adopts the conclusion announced in the majority opinion in that case, while rejecting the very premise upon which it rests. I am unable to follow the reasoning and cannot concur in the conclusion that, in repudiating the doctrine announced in the Webb case, we are following the highest judicial tribunal of the nation.

I do not share the fear, expressed in the majority opin-

ion, that if we follow the Webb case the state could never safely file separate counts in one information, as it customarily has done. In different counts a defendant may be charged with an assault to murder, an assault with a deadly weapon with intent to commit a bodily injury, an assault to rape, an assault to commit mayhem, and an assault to rob, and may be convicted on one count and acquitted on the others. Verdicts of not guilty on all but one of the counts would not be repugnant to, and would not nullify, the verdict of guilty on the one count. So a count for larceny may be joined with one for receiving stolen goods, and a verdict of not guilty on one would not be repugnant to, and would not nullify, a verdict of guilty on the other. So of burglary with force and burglary without force. So, also, of forgery and uttering. Other examples will readily occur to the profession, but the foregoing will suffice. The same rule applies where the same crime is charged in separate counts as having been committed by different means. Even the case assumed in the majority opinion need not cause any anxiety. If A were charged in two counts in an information with the murder of B at the same time and place and by the same means—an unthinkable supposition— the proper procedure would be for the jury to return a general verdict on the information, not a separate verdict on each count; and, of course, if that verdict should be **that the defendant is guilty**, the defendant would be sentenced for only one offense. *Short v. People,* 27 Colo. 175, 60 Pac. 350; *Snyder v. United States,* 112 U. S. 216, 5 Sup. Ct. 118; *Dunbar v. United States,* 156 U. S. 185, 15 Sup. Ct. 325; *Powers v. United States,* 223 U. S. 303, 32 Sup. Ct. 281; *Babcock v. United States* (C. C. Colo.), 34 Fed. 873; 27 R. C. L., pages 856, 857; 1 Bishop's New Crim. Proc., §1015a. Thus, the adoption of the correct procedure would avoid the difficulty suggested in the majority opinion. It also would have avoided the difficulty arising in the present case, for, as the court has said, in this case the charges in the several counts are identical.

32

Care on the part of district attorneys in preparing informations and indictments, and on the part of trial courts in submitting cases to the jury, would avoid situations such as the one presented in the assumed case and by the record in this case.

I find no warrant in the Dunn case for overruling the Webb case. The opinion in the Webb case, however, indicates that the decision should be overruled in part. It holds, what is obvious, that in the situation existing in that case "the two verdicts are irreconcilable, each flatly contradicts, is repugnant to, and *destroys* the other." It seems clear that as both verdicts were destroyed, they had no validity and could not support a judgment of either conviction or acquittal. Both verdicts were nullities and neither could support a plea of former jeopardy. Where such irreconcilable, contradictory, repugnant verdicts are returned, there is a mistrial. In the Webb case, however, we ordered the discharge of the defendant, holding that if the case were sent back for a new trial the defendant could successfully plead former jeopardy. The two holdings being inconsistent, we can, and should, accept the reasonable and reject the unreasonable.

Where, notwithstanding the vigilance of the district attorney and of the trial court, there is presented to us a situation such as this record discloses, justice to both the defendant and the people would be best served by reversing the judgment and remanding the case for a new trial. Such was the course followed in *Rosenthal v. United States,* 276 Fed. 714; *Speiller v. United States,* 31 Fed. (2d) 682; *State v. Akers,* 278 Mo. 368, 213 S. W. 424; *People v. Harrigan,* 218 Mich. 235, 187 N. W. 306. The last two cases were cited with approval in the Webb case. The dissenting justice in the Dunn case said that in his opinion the authorities establish as well-settled "that when, upon an indictment charging the same offense in different counts, the jury acquits as to one and convicts on the other defendant is entitled to a new trial." In *State v. Akers, supra,* which, as has been noted, was

cited with approval in the Webb case, the court said: "It will be noted that each count of the information charges appellant with the identical crime. The verdict finds him guilty under the first count and not guilty under the second count. The verdict is entirely inconsistent, because the jury could not have legally found what their verdict says they did find. Appellant was either guilty or not guilty of the crime, and could not have been both as found by the jury. We therefore think the verdict is too contradictory to support a judgment of conviction. The somewhat more difficult question now arises, what shall be done with the appellant? Shall he be ordered discharged or should the cause be remanded for a new trial? In the case of State v. Headrick, 179 Mo. 300, under a very similar verdict it was held: (1) That the verdict 'is inconsistent and contradictory and cannot be permitted to stand.' (2) That the portion of the verdict finding the defendant not guilty under one count operated as a bar to a conviction upon the other count, and that, therefore, the defendant was entitled to be discharged, which was accordingly ordered. With that portion of the opinion in the Headrick case holding the verdict should not be permitted to stand because contradictory (and therefore the same as no verdict) we readily agree and have applied the rule thus announced in the case at bar. But with the portion of the above mentioned opinion holding that such a verdict operates as a bar to a further prosecution and authorizes a discharge of the prisoner we are unable to agree. If the verdict in the Headrick case was too inconsistent to support a judgment of conviction it was likewise too inconsistent to support a judgment of acquittal. As has often been said, 'it is a poor rule which does not work both ways.' * * * The verdict held in review in the Headrick case and likewise the verdict in the case at bar, as has been pointed out above, are too contradictory to be considered a verdict either of conviction or acquittal. We are therefore of the opinion that the decision in the Headrick case, in

so far as it held that the appellant therein was, under the circumstances, entitled to be discharged, should be overruled. Since the verdict in the case at bar was not sufficient to sustain either a judgment of conviction or a judgment of acquittal it necessarily follows that the judgment should be reversed and the cause remanded for a new trial.'' The procedure followed in that case is reasonable and fair. It protects the substantial rights of defendants in criminal cases, and, what is of no less importance, it also protects the rights of the people.

So far as the Webb case holds that irreconcilable, contradictory, repugnant verdicts destroy each other, it should be followed; so far as it holds that such verdicts entitle the defendant to a discharge, it should be overruled.

From the foregoing considerations, I conclude that the judgment should be reversed and the cause remanded for a new trial.

MR. JUSTICE HILLIARD, dissenting.

So far as my brother Butler adheres to the views expressed in *Webb v. People*, 83 Colo. 1, 262 Pac. 906, I am in agreement with him, but beyond that I am quite as much opposed to his opinion as I am to that of the court. In my judgment the Webb case should be held to be controlling, for as I read it, it is sound in reason and salutary in effect.

One thing seems plain; that all the members of the court agree that the Webb case and the one at bar are similar. The lack of unanimity arises out of two things; that the case at bar is like or unlike *Dunn v. United States*, 284 U. S. 390, 52 Sup. Ct. 189, and that the Webb case is only partially sound. My opinion is that the court is mistaken in believing the Webb and Dunn cases to be similar, and that Mr. Justice Butler is mistaken in his position that in such circumstances a new trial can be had.

Assuming, however, that the Webb and Dunn cases are alike, I do not conceive that it is our duty to follow the latter and overrule the former. Within their respective spheres the Supreme Court of Colorado and the Supreme Court of the United States are equally powerful. Each, I presume, should respect the views and decisions of the other. In some circumstances our judgments may be reversed by those of that tribunal; in others, that court is as bound by what we have held as courts of inferior jurisdiction in this state are bound. What I argue chiefly is that I dislike overturning our unanimous decision in the Webb case solely because the Supreme Court of the United States, whose decision in no way controls us (*Massantonio v. People,* 77 Colo. 392, 236 Pac. 1019), has taken a different view upon a case there of first impression and contrary to what the majority in this cause concede the weight of authority may be.

The point made by Mr. Justice Butler, that the proper procedure is to remand and order a new trial, is, I think, sufficiently answered by what Mr. Justice Campbell said in the Webb case, at page 3: "* * * there is no verdict upon which defendant can be legally sentenced, and a reversal for a new trial upon any of the other grounds [of error alleged] would be useless since the verdict of the jury finding the defendant not guilty under the first count would entitle her to urge successfully the plea of former jeopardy upon either ground of the information." This language, it seems to me, gives potency to the provisions of our Constitution.

I wish to emphasize somewhat another point made by Mr. Justice Butler that care on the part of district attorneys and trial judges will obviate situations of this kind. My views on the duties of such officers may be found in *Kolkman v. People,* 89 Colo. 8, at page 65, 300 Pac. 575, 598, and although apparently apocryphal, are those to which I feel I must continue to subscribe. In short, we should not strain constitutions and overrule

fixed precedents to accommodate those who are entitled to no greater rights than accused persons.

I am of opinion that the judgment should be reversed and the defendants discharged.